UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY LYNN FORD,

                Plaintiff,

                                            Case No. 04-0682
-v-                                           Hon. Marianne O. Battani

GRAND TRAVERSE COUNTY, a
municipal corporation, et al.,
                Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT AS A MATTER OR LAW**

       Plaintiff Amy Lynn Ford, filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated her constitutional rights in that they were deliberately indifferent to her serious medical needs. The case proceeded to trial, and the jury returned a special verdict, finding Grand Traverse County was deliberately indifferent to Plaintiff's medical needs through its policy or custom regarding weekend medical care and that the policy was a proximate cause of Plaintiff's injury. See Jury Verdict Form. Defendant Grand Traverse County subsequently filed this request for judgment as a matter of law on the ground that the evidence is insufficient to show that the policy caused the Plaintiff's injury. (Doc. # 81). For the reasons that follow, the Court **DENIES** Defendant's motion.

**I. BACKGROUND**

       Plaintiff is an epileptic and needs Dilantin, an anti-seizure medication. On January 12, 2003, while she was incarcerated at the Grand Traverse County Jail, she suffered a grand mal seizure, fell from an upper bunk bed, and broke her right hip and right clavicle.

Plaintiff did not have her medication with her and had not taken any medication on the day she was arrested. Pursuant to Grand Traverse County practice, jail staff was permitted to leave a written request in the box of the visiting nurse for inmates needing medication. Moreover, the County permitted the jail nurse to set her own hours, and she could choose not to visit the jail on any given day.

There is no dispute that the visiting nurse did not visit the jail on the day Plaintiff suffered her injury. Defendant contends that this fact is immaterial, given the trial testimony of Dr. Wilcox relative to causation. Dr. Wilcox testified that even if Plaintiff had received her medication she would have suffered the seizure.

## II. STANDARD OF REVIEW

Rule 50 reads as follows:

(a) Judgment as a Matter of Law

> (1) If during a trial by a jury a party has been finally heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
>
> (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial. If, for any reason the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request

for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment--and may alternatively request a new trial under Rule 59. . . .

Fed.R.Civ.P. 50(a), (b).

## III.  ANALYSIS

Grand Traverse County cites the following testimony by Dr. Wilxcox in support of its motion.

> Q.  And so the literature that you are addressing, the Physician's Desk Reference and your own background, training and experience, in the medical field, reports that in order to reach a therapeutic level of Dilantin the blood level must be between 10 micrograms per liter, or per millimeter, to 20 micrograms per millimeter?
>
> A.  Yes.
>
> Q, And this 10 to 20 range is something that you, as a physician, if you get your patient into that range, you can be assured to a reasonable degree of medical certainty they (sic) won't have seizure activity?
>
> A.  That's correct.
>
> Q.  It will be well controlled, at least to a reasonable degree of medical certainty you can be assured that it will be controlled.
>
> A.  For the average epileptic patient, yes.
>
> Q.  If the Dilantin level is below that, you cannot to a reasonable degree of medical certainty say that whatever the Dilantin level is below that will control the seizure activity, true?
>
> A.  True.
>
> * * *
>
> Q.  In order for you to be assured to a reasonable degree of scientific certainty that Ms. Ford will not have an epileptic seizure, you have to see what, serum levels between 10 and 20 micrograms per liter, correct?
>
> A.  That would be my goal, yes.

3

Q. An that's what the literature talks about as far as the therapeutic range?

A. Yes.

Q And that's why you take regular blood level tests?

A. Correct.

Q. If somebody is an alcoholic or consuming alcohol at the same time they (sic) are taking Dilantin, how does that affect the Dilantin level in their blood stream?

A. If they (sic) are a chronic alcohol user it depresses the Dilantin level in the blood stream, and even if they were taking the appropriate amount, the liver like the alcohol better, so it would process the alcohol and not process the Dilantin.  And so they (sic) can be, if they are drinking steadily, the Dilantin level may take three, two to three times as much Dilantin by mouth to get them to their therapeutic and then you push them into toxicity.

Q. So it's a difficult situation if someone is an alcoholic taking Dilantin?

A. Yes, it's difficult to control.

*   *   *

A. Because one patient that takes 400 milligrams of Dilantin per day might make a therapeutic level.  If they (sic) are consuming alcohol on a regular basis, you might never get them to that therapeutic level.

A. That is correct.

Q. Given Ms. Ford's Dilantin, serum Dilantin level, if there is evidence introduced in this case that her serum Dilantin level in the hospital was, at seven o'clock roughly p.m., was 2.8 or 2.9, can you say, to a reasonable degree of medical certainty that if she had received two 100 milligram tablets of Dilantin at 9:30 in the morning, that would have prevented her seizure?

A. One it would not have probably affected that Dilantin level whatsoever, because it take seven to ten days to get up to a level where you can measure it.  And two, no, I cannot say that will have prevented her seizure.

*   *   *

> Q. And specific as to Ms. Ford's case, is it your testimony that had she received these one hundred milligram tablets at two in the morning, that you cannot testify to a reasonable degree of medical certainty that would prevent a seizure.?
>
> A. I cannot.

Def.'s Ex. 1, Tr. of Jury Trial.

Based upon this testimony, Defendant concludes that the policy regarding weekend medical care could not be the cause of Plaintiff's injury. Even if the jail nurse had come to the jail and given Plaintiff the Dilantin, her seizure would not have been prevented.

At trial Dr. Wilcox admitted that he knew that Ms. Ford was an alcoholic and that she was unreliable in terms of taking her medication when he was deposed. Dr. Wilcox nevertheless testified at his deposition that it was safe to assume that two pills for Ms. Ford would be effective for 12 hours. See Pl.'s Ex. 1. He further affirmed that if Plaintiff had no Dilantin in her system, it would take one to four hours to actually become effective. Id.

The sole issue presented in Defendant's motion is whether the use of Dr. Wilcox's deposition testimony to impeach him constitutes substantive evidence. Defendant contends that impeachment evidence of a non-party does not constitute substantive evidence. Cyras v. Hofbauer, 383 F.3d 485, 491 (6th Cir. 2004) (addressing the petitioner's habeas claim that counsel's failure to offer a limiting instruction on the jury's use of impeachment statements constituted ineffective assistance).

Defendant's reliance on Cyras is misplaced. In that case unsworn statements made to the police were introduced solely to impeach the witnesses. Thus, the statements could not be considered substantive evidence. In contrast, under FED.R.EVID. 801(d)(1)(A), a prior inconsistent statement, given under oath at a deposition, is substantively admissible. M. Graham, Federal Practice and Procedure: Evidence § 7011.

### IV. CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendant's Motion for Judgment as a Matter of law.

**IT IS SO ORDERED.**

                                                     s/Marianne O. Battani
                                                   Hon. Marianne O. Battani

Date: December 4, 2006


### CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

                                                   s/Bernadette M. Thebolt
                                                 Deputy Clerk